## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**TRIPLE FIVE OF MINNESOTA, INC.,**
**a Minnesota corporation,**

          Plaintiff,

    v.

**MELVIN SIMON; HERBERT SIMON;**
**RANDOLPH FOXWORTHY; MELVIN**
**SIMON & ASSOCIATES, INC., an**
**Indiana corporation; SI-MINN**
**LIMITED PARTNERSHIP, an Indiana**
**limited partnership; SI-MINN, INC.,**
**an Indiana corporation; DAVID**
**SIMON; SIMON PROPERTY GROUP,**
**INC., a Delaware corporation;**
**SIMON PROPERTY GROUP L.P., a**
**Delaware limited partnership; MS**
**MANAGEMENT ASSOCIATES, INC.,**
**an Indiana corporation; SIMON**
**MANAGEMENT ASSOCIATES, INC.,**
**an Indiana corporation; MALL OF**
**AMERICA ASSOCIATES, a**
**Minnesota general partnership;**
**MOAC LIMITED PARTNERSHIP, a**
**Minnesota limited partnership;**
**MALL OF AMERICA COMPANY, a**
**Minnesota general partnership;**
**MINNTERTAINMENT ASSOCIATES, a**
**Minnesota general partnership;**
**MINNTERTAINMENT COMPANY, a**
**Minnesota general partnership;**
**MOAC MALL HOLDINGS LLC; MOA**
**LAND HOLDINGS LLC; MOA**
**ENTERTAINMENT COMPANY LLC;**
**and DOES 1 TO 20,**

          Defendants.

---

Civil No. 99-1894 (PAM/JGL)

**O R D E R**

FILED   MAR   9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

APPEARANCES

Roger Magnuson, Esq., Mark Chasteen, Esq., and Brian Palmer, Esq., for Plaintiff

Lawrence J. Field, Esq., and Thomas Fraser, Esq., for Defendants

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on March 12, 2002, on Plaintiff's Motion to Compel Production of Documents and Plaintiff's Motion to Compel Production of Documents Authored or Received by Defendant Randolph Foxworthy. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

This litigation arises from a dispute between partners in business entities with ownership interests in the Mall of America. The business relationships are quite complex, and having been recited in previous orders, will not be described in detail here. The dispute arose from a transaction in October 1999 in which the Teachers Insurance and Annuity Association ("Teachers") sold 50% of its interest in the Mall of America to Defendant Simon Property Group, Inc. Plaintiff Triple Five of Minnesota, Inc. ("Triple Five") alleges that the sale was conducted without its knowledge through a collection of corporate entities controlled by or affiliated with the Simon family. Triple Five claims that Defendants breached fiduciary and contractual duties by

- 2 -

usurping a business opportunity that should have been offered to it.  Triple Five also claims that Defendants breached fiduciary and contractual duties when the Simon Property Group placed a $312 million mortgage on the mall in order to finance the Teachers sale.

## I.    **Triple Five's First Motion to Compel**

Triple Five seeks an order compelling Defendants to produce two categories of documents: notes and other documents related to meetings and other communications, and documents concerning the value of the Mall of America.

### A.    **Notes and Other Documents Related to Meetings and Other Communications**

With respect to the first category, Triple Five refers to several broad document requests (Nos. 2, 3, 4, 5, 6, 7, 8, 9, 13, 32, 33, and 34) in its moving papers.  Similarly as broad is Triple Five's contention that Defendants "have failed or refused to produce notes, minutes, memoranda, and other documents that memorialize or refer or relate to partnership meetings or other meetings and communications related to issues central to this litigation." (Pl. Mem. at 2.)  The basis for this assertion is Defendants' relatively recent production of notes taken at partnership meetings from 1995 through 1998 by John Wheeler, the Mall's vice president, and by Arthur Spellmeyer, a senior vice president.  Although Triple Five made the document requests in July 2000, the notes were not produced until just before the depositions of Wheeler and Spellmeyer in January and February 2002, respectively.  Both Wheeler and

Spellmeyer testified in their depositions that they were only recently asked to look for relevant documents. From these events, Triple Five infers that Defendants failed to thoroughly search for and produce all relevant documents. However, the only particular documents Triple Five specifies as missing are partnership meeting notes from Wheeler and Spellmeyer taken prior to 1995 and after 1998.

At the hearing, Defendants explained why Wheeler and Spellmeyer did not personally look for responsive documents after the requests were served in July 2000. Defendants' counsel, Lawrence Field, stated that after he received the document requests, he and his "swat team" went to Mr. Wheeler's office and conducted a search for relevant documents with the help of Wheeler's assistant. Apparently, this search was not as thorough as Defendants would like the Court to believe, however, because the "swat team" obviously did not uncover the notes later produced by Wheeler and Spellmeyer at their depositions.

Consequently, the Court recognizes the likelihood that Defendants did not thoroughly search for and produce all responsive documents. Defendants are ordered to conduct a meticulous search for and produce all documents that memorialize or relate to partnership meetings or other meetings or communications concerning Teachers' interest in the Mall of America; the transfer or recapitalization of Teachers' interest; and financing related to the Mall. The Court agrees with Defendants that Document Request

- 4 -

4, regarding the Ghermezians and Shawn Samson, is vague and ambiguous and must be answered only to the extent required by the scope set forth in the preceding sentence. In conducting this search, Defendants must seek documents directly from the people involved. Furthermore, there is no preestablished relevant time frame, contrary to Defendants' assertions.[1] If documents are responsive to the subject matter of the discovery requests, they must be produced.

Despite the reason for the above directive, the Court realizes that the search may not yield any more documents. Indeed, Triple Five was hard-pressed to specify particular documents missing from production thus far. Unfortunately, given the vagueness of Triple Five's motion, this Order must likewise be vague in scope. The Court declines to require Defendants to submit an affidavit certifying they have conducted a thorough search and produced all relevant documents. The circumstances leading to the Court's prior Order requiring such a certification from Triple Five are not comparable to the present dispute. Defendants must produce the information within thirty days of the date of this Order.

---

[1] The degree to which Defendants distort this Court's prior Order is remarkable. In October 2001, this Court found that certain documents concerning litigation in 1994 between Triple Five and the Simons were irrelevant to this case. The ruling was predicated exclusively on Defendants' utter failure to "even attempt to establish how this information is relevant." (Order of Oct. 26, 2001, at 16-17.) The Court's ruling in no way can be interpreted to mean that all documents prior to 1995 are irrelevant in this case.

- 5 -

## B.   Documents Concerning the Value of the Mall of America

Triple Five asserts that Defendants have not fully answered Document Requests 11, 12, and 27. Specifically, Triple Five seeks appraisals created in connection with property tax litigation and a commissioned study of the Mall of America as a brand name. Defendants do not contest the relevance of the appraisals, but claim they do not possess the documents. The appraisals are located at the law firm of Larkin, Hoffman, Daly & Lindgren, which handles the Mall's tax litigation. Defendants apparently do not contest the production of the commissioned study because they failed to brief the matter. (Def. Mem. Opp'n. at 3-4.)

The Court finds that all of the valuation documents now at issue must be produced by Defendants. Federal Rule of Civil Procedure 34 requires a party to produce requested documents if they are within its "possession, custody or control." Fed. R. Civ. P. 34(a)(1). The question, therefore, is not only whether the documents are within the physical possession of the party, but also whether the party has a legal right to the documents or practical ability to obtain the information. See Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 636 (D. Minn. 2000). Clearly, Defendants have a legal right to the documents and the ability to obtain the documents from their tax attorneys. Thus, the appraisal information must be produced. Finally, because Defendants have made no argument to the Court regarding the commissioned study, this material must also be produced.

- 6 -

Defendants must produce the information within thirty days of the date of this Order.  The Court declines to require Defendants to provide a certification because the circumstances of this dispute do not warrant it.

## II.  Triple Five's Motion to Compel Production of Documents Authored or Received by Defendant Randolph Foxworthy

Defendants withheld from production sixty-two documents and redacted twenty-four documents,[2] which were either authored or received by Defendant Randolph Foxworthy, based on attorney-client privilege and the work product doctrine.  Foxworthy is an in-house lawyer for the various Simon business entities.  Triple Five asserts that Foxworthy's role in the transactions at issue in this case was as a business and financial strategist, not as a lawyer.  Defendants acknowledge that Foxworthy had a significant business role, and they have produced hundreds of documents related to Foxworthy's business and financial functions.  However, Defendants maintain they properly withheld documents containing communications in which Foxworthy was acting as counsel to the Simon companies.

### A.  Attorney-Client Privilege and the Work Product Doctrine

Attorney-client privilege is a "long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client."  Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 601 (8th Cir. 1977).  For the privilege to apply, the

---

[2] Triple Five challenges only twenty of the twenty-four redacted documents.

parties in question must have a lawyer and client relationship. See id. at 602. The lawyer "must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." Id. The work product doctrine establishes that "information or materials assembled by or for a person in anticipation of litigation or in preparation for trial may be qualifiedly privileged from disclosure to an opposing party." Id. at 601.

The party asserting the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for its assertions. See Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985). This burden is met when the party produces "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit" from counsel. Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (applying the test to both attorney-client privilege and the work product doctrine).

Here, the Court finds that Defendants have met their burden. Defendants provided detailed privilege logs to Triple Five, which for each document withheld listed the type of document, the date of creation, the author, the recipient, the subject matter, and the applicable privilege. (Field Aff. Exs. 1, 2.) In addition, Defendants furnished a comprehensive, sworn statement from Foxworthy, who is a member in good standing of the Indiana

Bar. Foxworthy serves as in-house counsel to Defendants Simon Property Group, Inc., Melvin Simon & Associates, and Si-Minn, Inc. Since he began working for the Simon companies in 1980, his primary duties have been to analyze corporate and real estate agreements, provide legal advice, and monitor outside counsel. Specifically, Foxworthy is chief counsel for the companies with respect to all Mall of America matters. The Simons designated Foxworthy the chief in-house counsel on the transaction at issue in this case: the sale of Teacher's interest to Simon Property Group, Inc., and the $312,000,000.00 loan to finance the sale. Foxworthy acknowledged that he played a business and financial role in the transaction, but also functioned as a lawyer to the Simon organization in numerous ways such as analyzing partnership agreements and providing pertinent legal advice, directing and supervising outside counsel, coordinating the internal legal team working on the transaction, and providing legal advice to the Simons regarding legal strategy specifically with respect to Triple Five. After Triple Five sought documents from Foxworthy, he and outside counsel reviewed documents, notes, memoranda, and emails to determine which communications were business-related and which were protected by attorney-client privilege and the work product doctrine. Hundreds of complete documents were produced to Triple Five, but privileged documents were withheld. Foxworthy's statement is consistent with declarations from David Simon, Herbert Simon, and the General Counsel of Simon Property Group, Inc., James Barkley.

Triple Five has offered no evidence, only speculation, to rebut Defendants' basis for withholding the documents. Triple Five cites deposition testimony from Foxworthy and the Simons, in which they described Foxworthy's business and financial role. From this, Triple Five asks the Court to infer that Foxworthy had only a business role. However, it is clear to the Court that Foxworthy functioned as a lawyer to the Simon companies as well as a business advisor. Thus, the privilege stands. See Rabushka, 122 F.3d at 565. Likewise, with respect to the work product doctrine, Triple Five can merely speculate that documents generated well before the filing of the complaint were not prepared in anticipation of litigation. Given that the parties have been involved in litigation or threatened litigation for the past ten years, the Court is inclined to disagree with Triple Five's position.

## B.   Waiver

The Court finds unavailing Triple Five's argument, mentioned in a footnote, that Defendants waived the attorney-client privilege by producing some documents containing Foxworthy's mental impressions of the Teachers' sale. The Court has reviewed the cited documents and concludes they contained business and financial advice from Foxworthy.

## C.   The Crime-Fraud Exception

"It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' [] between lawyer and client does not extend to communications 'made for the purpose of getting advice for

the commission of a fraud' or crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (quotation omitted). Before a court may perform an in camera review to determine whether the crime-fraud exception applies, the moving party must show "a factual basis adequate to support a good faith belief by a reasonable person" that an in camera review may reveal evidence establishing the claim that the exception applies. See id. at 572 (quoting Caldwell v. District Court, 644 P.2d 26, 33 (Colo. 1982)). The party may not merely allege that a fraud occurred and that disclosure would help prove the fraud, but must identify a specific communication made in furtherance of the fraud. See In re BankAmerica Corp. Sec. Litig., 270 F.3d 639, 641 (8th Cir. 2001) (citing Rabushka, 122 F.3d at 566). After the moving party makes the required showing, a court has the discretion to conduct an in camera review and should consider the facts and circumstances of the case including the volume of the documents, their importance, and the probability that the crime-fraud exception would apply. See id. at 642 (citing Zolin, 491 U.S. at 572).

In this action, Triple Five alleges that Defendants secretly negotiated the Teachers' sale, deceived Triple Five into believing that Defendants would protect its interests, and deprived Triple Five of information necessary to protect its interests. As its factual basis that the crime-fraud exception would apply, Triple Five refers to three communications: a March 1998 letter from Foxworthy to Teachers, a telephone call between Foxworthy

and Shawn Samson of Triple Five in August 1998, and a May 1999 letter by Foxworthy.

In the March 1998 letter to Teachers, Foxworthy stated, "We are sure you appreciate that our partner, Triple Five, also has direct interests in the same issues and their position may well be different than either yours or ours." Triple Five cites to an Order from the District Court, which found that the letter could constitute mail fraud if Defendants actually had no intention of protecting Triple Five's interests. (Order of August 2, 2000 at 26-27.) With respect to the August 1998 telephone call, Triple Five relies on the deposition testimony of Samson, who said Foxworthy told him the following:  the Simons were not interested in a transaction with Teachers at the price sought by Teachers, there had been no meetings with Teachers regarding a sale, Foxworthy was not aware of any future meetings with Teachers, Triple Five would be included in any meeting with Teachers, and Triple Five would be notified in advance of any proposal the Simons made to Teachers. In the May 1999 letter to Triple Five, Foxworthy stated that the Simons and the entities they control had not been negotiating with Teachers, and he assured Triple Five that he was protecting the economic interests of the Mall of America Associates, in which Triple Five was a partner. Triple Five views the above evidence as proof that the Simon companies, through Foxworthy, engaged in a scheme to defraud Triple Five and deprive it from participating in the Teachers' sale.

In evaluating Triple Five's threshold showing, the Court must relate it to a specific cause of action based on fraud or a cause of action requiring an element of fraud, such as fraudulent intent. See In Re BankAmerica, 270 F.3d at 643. Triple Five associated its factual showing only to an ambiguous, purported "scheme to defraud," but Triple Five did not plead common law fraud in its complaint. Thus, the Court must surmise which cause of action is related to Triple Five's showing. Triple Five did plead fraudulent inducement of a settlement agreement, but its factual showing clearly does not relate to the 1996 agreement. For example, the communications submitted as the factual showing occurred after 1996 and therefore would not show a prospective scheme to defraud.

Triple Five also pleaded violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, against Defendants Melvin Simon, Herbert Simon, David Simon, and Randolph Foxworthy. (Compl. ¶¶ 190-204.) The Court finds that this must be the cause of action relating to Triple Five's factual showing. A RICO action requires a "pattern of racketeering activity," such as the commission of at least two predicate acts listed in § 1961(1). Possible predicate acts include mail fraud and wire fraud. Id. § 1961(1)(B). In the complaint, Triple Five alleged that the above Defendants employed schemes to defraud Triple Five, in part by engaging in repeated acts of mail fraud and wire fraud. (Id. ¶¶ 193-94.) The District Court found that the letter of March 6, 1998 "could amount to fraud if the promisor

- 13 -

had no intention to perform at the time the promise was made." (Order of August 2, 2000 (citing Vandeputte v. Soderholm, 216 N.W.2d 144, 147 (Minn. 1974)). The letter of May 7, 1999 contained a representation similar in nature.[3]

Therefore, in light of the District Court's Order, this Court must find that a reasonable person could believe in good faith that an in camera review could reveal evidence establishing Triple Five's claim that the crime-fraud exception applies. Triple Five's factual showing is not a mere offering of a general theory, as Defendants submit, but evidence of particular communications made in furtherance of the fraud alleged in this case.

Next, the Court must determine whether to perform an in camera review. Triple Five has asked the Court to review eighty-two documents, which is a voluminous number. On the other hand, the documents are potentially very important given Foxworthy's admittedly extensive involvement with the transaction at issue. Finally, there is a probability that the crime-fraud exception would apply, especially considering the District Court's language in its Order of August 2, 2000. Consequently, the documents listed on the privilege log, which could constitute other RICO predicate acts of wire fraud or mail fraud, must be produced to the Court for in camera review.

---

[3] As to the August 1998 telephone call between Foxworthy and Samson, there is no evidence before the Court that interstate wires were used, and thus, it cannot constitute wire fraud as part of Triple Five's factual showing.

- 14 -

## III.    THE PROCEDURE FOR IN CAMERA REVIEW

Defendants must submit the documents in question to the Court by Monday, March 25, 2002.  In addition, Defendants must submit an in camera, supplemental memorandum explaining for each and every document withheld why the crime-fraud exception does not apply, citing applicable law where appropriate.  Defendants are instructed to consider the relevant fraud to be mail or wire fraud as it could relate to Triple Five's RICO claim.  Triple Five is permitted to file a simultaneous memorandum.

Although the United States Supreme Court has not specified the quantum of proof necessary to establish the crime-fraud exception, there is a higher standard for disclosure than for in camera review.  See In re Gen. Motors Corp., 153 F.3d 714, 716 (8th Cir. 1998) (citation omitted).  The Eighth Circuit, which has allowed the district court to determine the appropriate standard of proof in the past, recognizes the different standards adopted by other courts.  See In Re BankAmerica, 270 F.3d at 644 (citing In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997) (evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent fraud); In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996) (reasonable cause); In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (probable cause); In re Int'l Sys. & Controls Corp., 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence that

will suffice until contradicted and overcome by other evidence)). The parties in this case are invited to brief the Court on the appropriate standard of review.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

(1)   Plaintiff Triple Five's Motion to Compel Production of Documents (Doc. No. 108) is **GRANTED IN PART** and **DENIED IN PART** as set forth in the body of this Order; and

(2)   Plaintiff Triple Five's Motion to Compel Production of Documents Authored or Received by Defendant Randolph Foxworthy (Doc. No. 115) is **DENIED** as to production, but **GRANTED** as to the request for in camera review. The parties must comply with the procedure for in camera review set forth in Part III. of this Order.

Dated: March 15, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

- 16 -