UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Triple Five of Minnesota, Inc.,            Civ. File No. 99-1894 (PAM/RLE)
a Minnesota corporation,

                    Plaintiff,
v.                                      **MEMORANDUM AND ORDER**

Melvin Simon, et al.,

                    Defendants.

This matter is before the Court on remand from the Eighth Circuit Court of Appeals and on several Motions relating to post-remand relief.

**BACKGROUND**

As the parties are well aware, this case arises from various unscrupulous acts by Defendants.[1] Thus far, the parties have focused primarily on equitable claims based on Defendants' breaches of fiduciary duties relating to the 1999 purchase transaction of a 27.5% interest in the Mall of America.

**A.     Previous District Court Proceedings**

Because the Court chronicled the facts of this case in previous orders, it will not recount them in detail. Instead, the Court will provide a brief summary of the claims and procedural history of this case.

       1.     <u>The Claims</u>

---

[1] Although Triple Five sued several individuals and entities, the Court refers to the parties sued generically as Defendants, unless otherwise appropriate.

Plaintiff Triple Five commenced this action in 1999, setting forth twelve claims against Defendants. Count One and Counts Six through Nine contain equitable claims. Specifically, Count One alleges that Defendants breached their common law fiduciary duties by usurping opportunities that rightfully belonged to the Mall of America Associates ("MOAA") and by failing to disclose information to Triple Five. Counts Six through Nine request various equitable remedies.

Counts Two through Five and Ten through Twelve set forth legal claims. Count Two alleges a violation of the Minnesota Uniform Partnership Act, Minn. Stat. § 323. In particular, it alleges that Defendants improperly assigned partnership property in violation of § 323.08(1), acted in a manner that made it impossible to carry on the partnership business in violation of § 323.08(3), violated statutory fiduciary duties owed under § 323.20, denied Triple Five access to partnership books in violation of § 323.18, failed to provide Triple Five full information in violation of § 323.19, and failed to provide Triple Five a formal accounting in violation of § 323.21.

Count Three alleges that Defendants breached provisions in MOAA Partnership Agreements. Count Four alleges tortious interference with contract, fiduciary duties, and prospective business advantage by persons and entities associated with Defendants. Count Five claims conversion of property interests, including assets, a contractual right of first refusal, and a right to receive a proportionate share of any distributions.

Counts Ten and Eleven relate to the alleged breach of a 1996 settlement agreement and the purported fraudulent inducement to enter into the settlement agreement. In September

2003, the Court noted that Triple Five abandoned those claims, and Triple Five affirmed its abandonment on September 7, 2005. Count Twelve alleges a RICO violation, which the Court dismissed in August 2002.

    2.    <u>The Equitable Claims Trial</u>

In April 2003, the Court ordered the bifurcation of the legal and equitable claims and required a bench trial on all equitable claims. The Court ruled that Triple Five's legal claims would be tried subsequently to a jury.

The Court tried the equitable claims in June through August 2003. Following trial, the Court found that Defendants had brazenly and egregiously breached their fiduciary duties by concealing the negotiations relating to the 1999 purchase transaction, by failing to disclose the material terms of the transaction to Triple Five, and by usurping a partnership opportunity. It therefore granted most of the equitable relief requested by Triple Five. In particular, it imposed a constructive trust on the 27.5% interest in favor of Triple Five and gave Triple Five the right to buy the interest for the same price Simon Property Group paid. In addition, the Court required Simon Property Group to disgorge both its net profits from the 27.5% interest and its financing fee for obtaining the Mall mortgage. The Court also awarded Triple Five the stub period income and tenant allowance reserve distributions and ordered an accounting. The Court further ordered that Triple Five replace Si-Minn as managing partner of MOAA and that Triple Five receive 80% of partnership distributions. The Court also enjoined Defendants from conducting any extraordinary business relating to the Mall without Triple Five's consent. Finally, the Court awarded Triple Five its attorneys' fees and costs, and ordered Defendants to

reimburse defense fees and costs paid by any Mall partnership. The Court did not award Triple Five damages for the breach of fiduciary duty claim based on a finding that the unwinding of the purchase transaction would afford Triple Five full relief.

In January 2004, Triple Five filed a Motion for Partial Summary Judgment on the breach of contract, breach of statutory fiduciary duty, and conversion claims, arguing that Defendants were liable based on the exclusion of Triple Five from the 27.5% interest transaction.

In rendering its decision on the Motion for Partial Summary Judgment, the Court recognized that the bench trial did not, and did not purport to, dispose of Triple Five's legal claims. The Court granted Triple Five summary judgment on the statutory breach of fiduciary duty and breach of contract claims, finding that its determinations on Triple Five's equitable claims collaterally estopped Defendants from re-litigating the issues underlying those determinations. However, the Court denied Triple Five summary judgment on the conversion claim, finding that its determinations relating to the common law breach of fiduciary duty claim did not establish the elements of Triple Five's conversion claim. The Court also addressed the issue of damages, stating:

> If Triple Five has already received complete relief in this matter, there is no need for a determination of damages, except as to Triple Five's as-yet-unresolved conversion claim. Should the parties believe that a jury determination of damages is necessary, they should make an appropriate Motion to the Court. At this time, the Court believes that the relief afforded by the Court's September 20, 2003, Order is the complete relief sought by Triple Five for its breach of fiduciary duty and contract claims, and no further relief is warranted. However, because Triple Five's conversion claim remains for resolution, the Court will not enter final judgment on damages until the conclusion of that claim.

4

(Order at 8, Feb. 10, 2004.) Neither the parties nor the Court addressed the tortious interference claim in the Motion for Partial Summary Judgment or in any other subsequent pleading.

In March 2004, the Court adopted the special master's recommendation that Defendants reimburse Triple Five $5,268,887.12 in reasonable costs and attorneys' fees incurred through October 2003. In doing so, the Court rejected Defendants' argument that a fee cap agreement between Triple Five and its counsel governed the amount of fees that Triple Five is entitled to recover in this action.

In June 2004, the Court ruled that Triple Five was entitled to ancillary relief. Specifically, it ordered Defendants to indemnify and hold harmless Triple Five from any expenses, losses, and claims arising out of or connected to Triple Five's purchase of the 27.5% interest in the Mall. The Court also enjoined Defendants from acquiring any interest in the Mall until 2010.

In September 2004, the Court ordered Defendants to reimburse the Mall partnerships, which had paid defense fees and costs totaling $11,247,926.00.

## B.   The Eighth Circuit Court of Appeals' Decision

Following the bench trial, Defendants appealed this Court's rulings on the equitable claims to the Eighth Circuit Court of Appeals. The Eighth Circuit affirmed the finding of a breach of fiduciary duty with respect to the 1999 purchase transaction, but it reversed in part on the issue of equitable relief. Specifically, the Eighth Circuit held that Triple Five did not have the right to acquire more than one-half of the 27.5% interest in the Mall because it was MOAA — not Triple Five — that had lost the opportunity to participate in the 1999 transaction. Accordingly, the Eighth Circuit remanded the action to this Court to impose the constructive trust in favor of MOAA and give MOAA the opportunity to purchase the 27.5% interest. If MOAA declined the purchase, the Court was to allow Triple Five the opportunity to buy one-half of the 27.5% interest. Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1099 (8th Cir. 2005).

The Eighth Circuit also held that this Court erred when it changed the MOAA partnership distributions from 50-50 to 80-20 in favor of Triple Five. It explained that the partnership distributions were to remain equally distributed between Triple Five and Simon Property Group. However, the Eighth Circuit affirmed the removal of Si-Minn as the managing partner of MOAA and the ruling that the management fee distribution should be 80-20 in favor of Triple Five. Id. at 1100.

## C.   The Special Master Report on Accounting

In the meantime, the Court appointed a special master to conduct an accounting of the Mall partnerships to determine if there were transactions or operational areas that may concern

the parties and warrant further investigation. Based on the audit, the special master concluded that the records relating to the Mall transactions generally were accurate and that no evidence existed of systemic abuse as manager of the Mall. However, the special master found some abnormalities and identified three areas that required further investigation.

The first abnormality related to the modification of a gift certificate program. In 2001, Si-Minn replaced the Mall's gift certificate program with an SPG gift card program. That change provided income to SPG while both depriving the Mall of income and increasing its expenses. The special master calculated that the Mall lost approximately $1,739,033.00 because of the change in programs.

The second area of concern related to insurance management for the Mall. After September 11, 2001, SPG took over the insurance management and included it in its overall system-wide program. It used an SPG entity as the provider for a portion of the insurance coverage. The special master noted that this change may have been helpful to the Mall, as the SPG entity may have provided a valuable service not available elsewhere (since the Mall was a terrorist target and insurance was difficult to maintain). However, the special master also noted that a significant amount of insurance coverage needed by the Mall was placed in a transaction that was not at arm's length.

The third area of concern related to tax services. In 1999, Defendants changed the method of managing the property tax issues at the Mall by moving from third-party vendors to a Simon entity organized as a profit center. From October 1999 to December 1999, the Mall paid both the Simon entity and the third-party vendors. The fee to the Simon entity included

a $343,573.00 payment. The special master concluded that the timing of the payment in relation to Simon's initiation of service appeared suspect.

**D.     Issues Now Before the Court**

Since the Eighth Circuit remanded the equitable claims portion of this action, the parties have raised several issues. A primary issue is whether the Court may dissociate Si-Minn from MOAA at a buyout price calculated as of October 1999, the date that Simon Property Group wrongfully acquired the 27.5% interest from Teachers Insurance and Annuity Association of America ("TIAA"). Another issue is whether Triple Five, as managing partner of MOAA, can oust Simon MOA Management as quotidian manager of the Mall. The parties also dispute whether the ancillary relief provided by the Court remains in effect and whether the Court can broaden that relief. In addition, the parties disagree on whether the Court should join Teachers as a party to this litigation.

**DISCUSSION**

**A.     Dissociation**

Relying on the equitable powers of the Court, Triple Five asks the Court to dissociate Si-Minn from MOAA before MOAA acquires the 27.5% interest in the Mall of America Company ("MOAC").

The Court has broad latitude when imposing equitable remedies designed to redress the injuries caused by breaches of fiduciary duty. Bolander v. Bolander, 703 N.W.2d 529, 548 (Minn. Ct. App. 2005). However, those powers in this case are limited by the mandate of the Eighth Circuit. The Court may not contravene either the letter or the spirit of an order by the

Eighth Circuit. Pearson v. Norris, 94 F.3d 406, 409 (8th Cir. 1996). Moreover, the Court cannot give "any further or different relief with respect to any question decided on appeal." Klein v. Arkoma Prod. Co., 73 F.3d 779, 784 (8th Cir. 1996).

The Eighth Circuit reviewed the breach of fiduciary duty issue and determined the proper scope of the equitable relief. It ruled that Triple Five may acquire only one-half of the 27.5% interest previously usurped by Defendants. If the Court dissociated Si-Minn from MOAA before transferring the 27.5% interest to MOAA, Triple Five would effectively acquire benefit of the full 27.5% interest. Because the remedy Triple Five seeks would contravene the mandate of the Eighth Circuit, the Court will not dissociate Si-Minn from MOAA.[2]

**B.      Transfer of 27.5% Interest**

The Eighth Circuit issued its decision in April 2005. Soon thereafter, Triple Five agreed to transfer the 27.5% interest to MOAA. However, Triple Five suggested delaying the transfer until the Court addressed whether the equity remedy of dissociation, so as to avoid superfluous closing and financing costs. Because the Court has now ruled on the dissociation issue, there is no reason to delay the transaction. The parties must proceed with the transfer of the 27.5% interest to MOAA within the next thirty days.

---

[2] In November 2005, Defendants indicated that they were amenable to dissolving MOAA pursuant to Article XII of the MOAA Partnership Agreement. Given the untenable relationship between the parties, the Court strongly urges the parties to dissolve the dysfunctional partnership. However, a court-ordered dissolution is premature and inappropriate.

**C.   Property Management**

Triple Five seeks to replace Simon MOA Management as the operational manager of the Mall. It contends that the Management Agreement is a product of Defendants' self-dealing, and that the Agreement undermines Triple Five's authority as managing partner. In contrast, Defendants assert that the Management Agreement remains fully enforceable and that nothing has happened to trigger any termination provision in the Agreement. Under the Management Agreement, Simon MOA Management receives a management fee equal to 5% of the gross rental income from the tenants of the Mall.

The execution of the Management Agreement is yet another example of Defendants' self-serving and insidious acts. Defendant Randolph Foxworthy executed the Management Agreement on behalf of both Si-Minn and Simon MOA Management and dictated that the Simon MOA Management remain manager in effective perpetuity. Moreover, the fee provision in the Management Agreement ostensibly conflicts with the fee provision in the MOAA Partnership Agreement, as the latter requires MOAA to pay Si-Minn and Triple Five — and not Simon MOA Management — the 5% management fee. In addition, the Partnership Agreement only provides the property manager reimbursement of costs and expenses incurred in the performance of management duties.

Furthermore, as the new managing partner, Triple Five has the right to select an appropriate manager. Forcing Triple Five to deal with Simon MOA Management — and thereby precluding Triple Five from the ability to choose a property manager that it believes will best serve the Mall — would render an absurd result. Indeed, the Eighth Circuit expressly

contemplated that Triple Five would oust Simon MOA Management.  See <u>Triple Five v. Simon et al.</u>, 404 F.3d at 1100 ("Even though a Simon-related company may still manage the Mall, it will be Triple Five's responsibility to contract with that party <u>or some other suitable entity</u>.") (emphasis added).  It also affirmed this Court's previous revisions to the Management Agreement to achieve an equitable result.

Finally, Defendants misconstrue this Court's previous rulings relating to the operational management issue.  Although this Court previously required the parties to abide by the terms of existing contracts and maintain status quo as it related to the operational management of the Mall, the Court imposed that restriction only while the Eighth Circuit appeal was pending.  Indeed, the Court expressly stated that Simon MOA Management "will continue as property manager of the Mall pending the Eighth Circuit appeal." (Order at 6, Sept. 29, 2004.)  The Court never intended to restrict Triple Five's authority to select an appropriate manager in perpetuity, as Defendants seem to suggest.  To achieve a just and equitable result, Triple Five, as managing partner of the Mall, may immediately remove Simon MOA Management as operational manager of the Mall and select another qualified and competent property manager.

**D.     Joinder of Teachers**

Defendants submit that the Court should join Teachers as a party when addressing the issues of dissociation of Si-Minn and termination of the Management Agreement.  The Court disagrees.

Federal Rule of Civil Procedure 21 provides that the Court may join parties "at any stage of the action and upon such terms as are just." The Court finds Defendants' current request to join Teachers ironic, since they have used the absence of Teachers as a means to challenge and limit remedies imposed by the Court throughout this litigation. Furthermore, as the Eighth Circuit recognized, the Court is not convinced that the joinder of Teachers would serve the ends of justice:

> To the extent that [Teachers], a non-party to this action, might object to our actions, we have two observations. When the MOAC contract was entered into, [Teachers] was the controlling partner with a 55% share. It now is a minority partner with only a 27.5% share, and its ability to dictate management decisions is accordingly diminished. Second, our review of the record indicates that [Teachers'] hands were not exactly unsullied with regard to the 1999 transaction, especially when it failed to notify Triple Five of its negotiations with Si-Minn and SPG as demanded by Herbert Simon in 1998. In this equitable action, we take this into account.

404 F.3d at 1100. Accordingly, the Court will not join Teachers to this action at this time.

**E. Attorneys' Fees**

Triple Five seeks an interim award of attorneys' fees and costs through August 16, 2005, in the amount of $6,979.687.06. Defendants do not dispute that they must pay Triple Five litigation expenses. Rather, they once again challenge the applicability of a fee cap and contend that they have never agreed to pay the expenses before final judgment was entered in this case.[3]

---

[3] The Court notes that Defendants have yet to reimburse the Mall partnerships for $11,247,926.00 in partnership funds they wrongly used to defend this action and have not yet reimbursed Triple Five $304,822.04 incurred in connection with the transfer of the 27.5% interest.

In exercising its discretion to determine whether an award of interim fees and costs is appropriate, the Court considers factors such as the nature and benefit that counsel has conferred upon Triple Five and the complexity of work performed. In re Endotronics, Inc., No. 4-87-130, 1989 WL 6746, at * 1 (D. Minn. Jan. 30, 1989) (Rosenbaum, J.).

Thus far, Triple Five's counsel has accomplished a great deal. This case has involved complex issues and strategies, as well as significant financial ramifications. Triple Five's counsel has vigorously pursued the claims against Defendants, preparing and arguing numerous motions and undertaking a three month bench trial. Counsel succeeded in proving to both this Court and the Eighth Circuit that Defendants egregiously violated their fiduciary duties. In addition, counsel prevailed in part on a partial summary judgment motion, which resulted in Triple Five succeeding on its breach of contract and statutory breach of fiduciary duty claims. See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 389 (1970) (holding that a party who succeeds on partial summary judgment on the issue of liability is entitled to an interim award of litigation expenses and attorneys' fees). Notwithstanding these accomplishments, Triple Five's counsel has much work ahead as many issues remain. Moreover, inevitably, more issues may be forthcoming and appeals are likely to follow. The Court therefore finds that an award of interim fees and costs is appropriate.

Defendants' threat to appeal the Court's decision on the applicability of the fee cap agreement does not dissuade the Court from awarding interim fees and costs. Furthermore, the Court finds Defendants' contentions duplicitous. On several occasions, Defendants have informed both the Court and the special master that they intended to promptly pay the

attorneys' fees and costs. Finally, delaying an earned fee award until final disposition would work a substantial hardship on Triple Five's counsel. In addition, it would discourage them and others from engaging in matters similar to the instant case. Defendants must pay Triple Five $6,979.687.06 in interim attorneys' fees and costs within thirty days of this Order.

**F.     Ancillary Relief**

In June 2004, the Court granted ancillary relief by ordering Simon Property Group to indemnify Triple Five from losses and expenses arising out of Triple Five's purchase of the 27.5% interest in the Mall, and by enjoining Defendants from acquiring any interest in the Mall before 2010. Triple Five now asks the Court to declare that the ancillary relief is still in effect, and to expand the indemnification and injunction to MOAA. Defendants argue that the Eighth Circuit declared this ancillary relief moot. They further contend that no rational basis exists for expanding the ancillary relief since it is unlikely that Simon Property Group will sue itself or another Simon-related entity with respect to the ownership of the 27.5% interest.

The previous grant of ancillary relief was rendered moot by the Eighth Circuit's decision. See Triple Five, 404 F.3d at 1100. Nonetheless, the Court now finds that new ancillary relief is necessary to carry out the orders of the Eighth Circuit and this Court. MOAA is composed of both Triple Five and Si-Minn, so Defendants' argument that it would be merely protecting itself is unavailing. Moreover, given the contentious behavior and untenable relationship of the parties, the Court believes that further litigation may be

inevitable. To ensure that MOAA is duly protected, the Court believes it is appropriate for Defendants to indemnify MOAA.

Likewise, Triple Five's concerns that Simon Property Group will scheme with Teachers to use the shotgun buy-sell provision as a means for Simon Property Group to seize control of the Mall are valid in light of the previous nefarious conduct. Thus, an injunction prohibiting Simon Property Group from using the shotgun buy-sell provision until 2010 is appropriate.

**G.     Outstanding Claims**

The parties dispute whether the equitable remedies ordered by the Eighth Circuit provide Triple Five full redress. Defendants argue that the election of remedies doctrine prohibits recovery because Triple Five elected to obtain equitable relief in lieu of damages. This is incorrect. During final arguments in the bench trial, Triple Five argued alternatively for damages or equitable relief.

Defendants also argue that Triple Five has been fully remedied and that all of Triple Five's remaining claims seek recovery for its exclusion from the 1999 purchase transaction. The Court disagrees. Although the Eighth Circuit held that Triple Five was not the proper party to obtain the equitable relief, it did not find that Triple Five was not damaged by Defendants' actions. Indeed, the Eighth Circuit expressly noted that Triple Five's legal claims remain. The conversion and tortious interference claims still remain, and Triple Five may seek damages for injuries related to those claims.

**CONCLUSION**

The Eighth Circuit dictated what equitable remedies the Court may impose for the breaches of fiduciary duties Defendants owed to Triple Five and MOAA. This Court cannot avoid that mandate. Nevertheless, Triple Five may still pursue damages against Defendants for its conversion and tortious interference claims. Accordingly, as set forth more fully above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Request for Post-Remand Relief is **GRANTED in part** and **DENIED in part**;

2. Plaintiff's Motion for Attorney Fees (Clerk Doc. No. 543) is **GRANTED**. Defendants shall remit payment of $6,979.687.06 in interim attorneys' fees and costs to Plaintiff within thirty days of this Order;

3. Defendants' Motion to Implement Eighth Circuit Mandate, and if Necessary, to Dissolve the MOAA Partnership (Clerk Doc. No. 549) is **GRANTED in part** and **DENIED in part**. Plaintiff shall transfer the 27.5% interest to MOAA within thirty days of this Order;

4. Defendants are hereby **ENJOINED** from using a shotgun buy-sell provision to purchase, acquire, or obtain any further actual or beneficial interest — direct or indirect — in the Mall, including the entertainment portion of the Mall or any Mall or Mall-related entertainment entities. This injunction will expire on January 1, 2010, absent further Order of the Court;

5.  Defendants shall indemnify and hold harmless MOAA, Triple Five, and any related entities from expenses, losses, or claims arising out of or connected to MOAA's purchase of the 27.5% interest in the Mall.


Dated: December 23, 2005

                                                s/ Paul A. Magnuson
                                                Paul A. Magnuson
                                                United States District Court Judge