UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Triple Five of Minnesota, Inc.,                          Civ. File No. 99-1894 (PAM/RLE)
a Minnesota corporation,

                                 Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

Melvin Simon, et al.,

                                 Defendants.

_____

       This matter is before the Court on Plaintiff's Motion for Trial on Damages.   For the

reasons that follow, the Court grants in part and denies in part the Motion.

**BACKGROUND**

       As the parties are well aware, this case arises from the 1999 sale of a 27.5% interest

in the Mall of America Company ("MOAC").   Because the parties are very familiar with the

background and procedural posture of this case, the Court will provide only a brief summary

of facts relevant to the instant Motion.

**A.      Bench Trial**

       Triple Five commenced this action in October 1999.   The Court set trial of the matter

for June 2003.   Defendants then requested that the Court bifurcate the trial into legal and

equitable claims, and first try the equitable claims to the Court.   Defendants argued that

resolution of the equitable claims before the legal claims was not only preferable, but

necessary. (See Feb. 10, 2004, Order at 2-3.)

       The Court agreed with Defendants, bifurcated the legal and equitable claims, and tried

the equitable issues in a bench trial.  After the bench trial, the Court found that Defendants had breached a fiduciary duty owed to Triple Five by concealing negotiations relating to the sale of the 27.5% interest, by not disclosing material terms of the transaction to Triple Five, and by usurping the partnership opportunity.  The Court ordered injunctive relief and imposed various equitable remedies, including a constructive trust in favor of Triple Five on the 27.5% interest.

**B.      Partial Summary Judgment Order**

After the bench trial on equitable issues, Triple Five filed a Motion for Partial Summary Judgment on its breach of contract, breach of statutory fiduciary duty, and conversion claims, arguing that Defendants were liable based on the exclusion of Triple Five from the 27.5% interest transaction.  The Court expressly recognized that the bench trial did not, and did not purport to, dispose of Triple Five's legal claims.  The Court granted Triple Five summary judgment on the statutory breach of fiduciary duty and breach of contract claims, finding that the determinations on Triple Five's equitable claims collaterally estopped Defendants from re-litigating the issues underlying those determinations.  In doing so, the Court analyzed Lytle v. Household Manufacturing, Inc., 494 U.S. 545 (1990), and Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), and concluded:

> Whether Defendants are collaterally estopped from re-litigating the breach of fiduciary duty issues decided in the bench trial depends on whether the Court's decision to try the equitable claims first was correct.  However, this case presents an interesting and important departure from either Parklane or Lytle.  In this case, . . . Defendants requested that the Court separate the equitable claims and try those first.  If the Court erred in so doing, Defendants invited that error.  Defendants cannot now be heard to complain about the consequences of that decision, consequences they themselves cited in support of bifurcation nearly one year ago.

2

(Feb. 10, 2004, Order at 5-6.)

However, the Court found that Defendants were not collaterally estopped from litigating the conversion claim, finding that the determinations relating to the common law breach of fiduciary duty claim did not establish the elements of conversion.   (Id. at 6-7.) Neither the parties nor the Court addressed the tortious interference claim.

**C.      The Appeal to the Eighth Circuit Court of Appeals**

Defendants thereafter appealed the Court's rulings on the equitable claims to the Eighth Circuit Court of Appeals.  The Eighth Circuit affirmed the finding of a breach of fiduciary duty with respect to the 1999 purchase transaction, but it reversed in part on the issue of equitable relief.  Specifically, the Eighth Circuit held that Defendants had usurped the opportunity to participate in the 1999 transaction from the Mall of America Associates ("MOAA"), rather than Triple Five.[1]  Accordingly, the Eighth Circuit remanded the action to this Court to impose the constructive trust in favor of MOAA and give MOAA the opportunity to purchase the 27.5% interest.  If MOAA declined the purchase, the Court was to allow Triple Five the opportunity to buy one-half of the 27.5% interest.  Triple Five of Minn., Inc. v. Simon, 404 F.3d 1088, 1099 (8th Cir. 2005).[2]

**D.      The Post-Remand Order**

---

[1] Triple Five and Defendant Si-Minn compose MOAA, a general partnership.

[2] The Eighth Circuit also held that this Court erred when it changed the MOAA partnership distributions from 50-50 to 80-20 in favor of Triple Five.  It explained that the partnership distributions were to remain equally distributed between Triple Five and Simon Property Group.  However, the Eighth Circuit affirmed the removal of Si-Minn as the managing partner of MOAA and the ruling that the management fee distribution should be 80-20 in favor of Triple Five.  404 F.3d at 1100.

3

In December 2005, the Court addressed all the issues remaining after the Eighth

Circuit's remand:

> The parties dispute whether the equitable remedies ordered by the Eighth Circuit
> provide Triple Five full redress. Defendants argue that the election of remedies
> doctrine prohibits recovery because Triple Five elected to obtain equitable
> relief in lieu of damages. This is incorrect. During final arguments in the bench
> trial, Triple Five argued alternatively for damages or equitable relief.
>
> Defendants also argue that Triple Five has been fully remedied and that all of
> Triple Five's remaining claims seek recovery for its exclusion from the 1999
> purchase transaction. The Court disagrees. Although the Eighth Circuit held
> that Triple Five was not the proper party to obtain the equitable relief, it did not
> find that Triple Five was not damaged by Defendants' actions. Indeed, the Eighth
> Circuit expressly noted that Triple Five's legal claims remain. The conversion
> and tortious interference claims still remain, and Triple Five may seek damages
> for injuries related to those claims.

(Dec. 23, 2004, Order at 15.)

Triple Five now moves for trial on damages on the breach of contract and tortious

interference claims.

**DISCUSSION**

**A.      Election of Remedies**

Defendants argue that the election-of-remedies doctrine precludes Triple Five from

seeking damages on either the breach of contract or the tortious interference claim.

"The election of remedies is 'the act of choosing between different remedies allowed

by law on the same state of facts, where the party has but one cause of action, one right

infringed, one wrong to be redressed.'"   Popp Telcom v. Am. Sharecom, Inc., 210 F.3d 928,

934 (8th Cir. 2000) (quoting George A. Hormel Co. v. First Nat'l Bank, 212 N.W. 738, 740-

41 (1927)).    "The doctrine's purpose is to prevent the claimant from collecting twice for a

single misdeed against it." Id. (citing Twin Cities Fed. Sav. & Loan Assoc. v. Transamerica Ins. Co., 491 F.2d 1122, 1125 (8th Cir. 1974)); see also Nw. State Bank v. Foss, 197 N.W.2d 662, 666 (Minn. 1972) ("The purpose of the election-of-remedies doctrine is not to prevent recourse to a potential remedy but to prevent double redress for a single wrong.") (citation omitted).  "Election of remedies has no application where a party 'has different remedies for the enforcement of different and distinct rights or the redress of different and distinct wrongs.'" Popp Telcom, 210 F.3d at 934 (quoting Hormel, 212 N.W. at 740).

Defendants rely on Sannini v. Casscells, 401 A.2d 927 (Del. 1979), to argue that a party's choice to proceed in equity to impose a constructive trust constitutes an election of remedies, which precludes the party from later seeking damages.  In Sannini, the plaintiffs sued their real estate broker, who violated a fiduciary duty owed to the plaintiffs when the broker purchased for herself property that the plaintiffs were actively seeking to purchase.  The trial court imposed a constructive trust on the property for the benefit of the plaintiffs and ordered the broker to convey the property to the plaintiffs.  However, the plaintiffs did not tender the required payment and the broker thereafter sold the property to a third party.  The plaintiffs argued that the deterioration of the rental market for the property since the time when their interest arose caused their inability to obtain financing.  They asserted that, because of their inability to obtain financing meant that the parties were not left in status quo, they should be awarded damages as an alternative remedy.  Id. at 928-30.  The Supreme Court of Delaware held that the plaintiffs' choice to proceed in equity to impose a constructive trust constituted an election of remedies, and the pursuit of that choice to final judgment precluded them from seeking damages.  Id. at 931.

However, <u>Sannini</u> is distinguishable.   In that case, the plaintiffs did not seek money damages when they commenced their lawsuit.   Rather, the plaintiffs first raised the alternative remedy in their pre-trial memorandum, when the litigation was well underway.   <u>Id.</u> at 930. Furthermore, the <u>Sannini</u> court made this important distinction:

> This case was not one where the Court . . . had concurrent jurisdiction over equitable and legal claims of a multicount complaint.   In those circumstances when the equitable claim dissipates, a court of equity has the discretion to retain jurisdiction over the legal claim and to award damages as justice requires.   [If] the legal and equitable claims [are] consistent, the . . . Court [has] concurrent jurisdiction over the legal and equitable claims.   However, in this case, the legal and equitable claims are inconsistent.   Because of this inconsistency, the plaintiffs were obliged to choose between remedies when they began their suit, and the pursuit of one remedy to final judgment precludes recourse to the other remedy.

<u>Id.</u> at 932.

In this case, Triple Five is seeking to recover a distinct remedy for a different wrong. The wrong that Triple Five sought to redress in its equitable claims was the breach of fiduciary duty by concealing negotiations and usurping the partnership opportunity.   In contrast, the wrong in the breach of contract claim arises from Defendants' failure to comply with its contractual obligations to Triple Five   — specifically, the failure to offer Triple Five the opportunity to purchase the 27.5% interest.   Under its tortious interference claim, Triple Five seeks redress for the wrongful obstruction of its opportunity to acquire the 27.5% interest. Because the legal claims deal with wrongs that are separate and distinct from the equitable claims, the election-of-remedies doctrine does not apply.   <u>See</u> <u>JCA P'ship v. Wenzel Plumbing & Heating, Inc.</u>, 978 F.2d 1056, 1061-62 (8th Cir. 1992) (rejecting the application of election-of-remedies doctrine when two actions deal with separate and distinct wrongs).

Moreover, the legal claims may entitle Triple Five to damages greater than the value of the 13.75% interest afforded under the equitable claims.   As long as the Court offsets the value of the previously awarded interest, there will be no double recovery.[3]   Popp Telcomm, 210 F.3d at 938.

Finally, "the principle underlying the election-of-remedies doctrine is the prevention of prejudice to the defendant."   Id. at 937 (citing Medcom Holding Co. v. Baxter Travenol Labs., Inc., 984 F.2d 223, 229 (7th Cir. 1993).   In this case, Defendants have not been prejudiced by Triple Five's pursuit of its legal claims, as Triple Five asserted the claims from the onset of this action.   Indeed, Defendants requested that the Court try the equitable claims before the legal claims.   Because Defendants always contemplated that there would be legal claims in addition to the equitable claims, the prevention of prejudice to Defendants is not a serious consideration in this case.   Accordingly, the election-of-remedies doctrine does not bar Triple Five from pursuing its breach of contract and tortious interference claims.

## B.    Breach of Contract

Count Three alleges that Defendants breached provisions in MOAA Partnership Agreements.[4]   In the Partial Summary Judgment Order, the Court construed Article XI.G of the

---

[3] Defendants also argue that double recovery is not an element of the election-of-remedies doctrine.   Rather, they contend that they need show only that Triple Five is seeking relief based on inconsistent theories.   They rely on Lassen v. First Bank Eden Prairie, 514 N.W.2d 831 (Minn. Ct. App. 1994).   However, Lassen is inapposite because the Minnesota Court of Appeals relied on a state statute that expressly prohibits deficiency judgments after mortgage foreclosure by advertisements.   See id. at 837 (citations omitted).   Popp Telcom, an Eighth Circuit decision, clearly states that the purpose of the doctrine is to prevent double recovery. 210 F.3d at 934.

[4] Although Triple Five asserts the breach of contract claim only against Defendants Si-Minn Developers Limited Partnership and Si-Minn, Inc., the Court refers to all parties sued

7

Partnership Agreement as requiring Defendants to offer Triple Five the opportunity to buy the 27.5% interest and ruled that Triple Five had established that Defendants breached Article XI.G.   (Feb. 10, 2004, Order at 6.)   Defendants now challenge that ruling, arguing that the mandate rule precludes Triple Five from obtaining more than a 13.75% interest in MOAC.   In addition, Defendants ask the Court to reconsider its previous holding that they are barred from litigating to the jury the elements of the breach of contract claim.

      1.    <u>Mandate Rule</u>

Defendants argue that the Eighth Circuit, by awarding Triple Five the opportunity to buy one-half of the 27.5% interest, implicitly rejected the argument that Triple Five has the contractual right to acquire the entire 27.5% interest.

On remand, the Court may not contravene either the letter or the spirit of an order by the Eighth Circuit.  <u>Pearson v. Norris</u>, 94 F.3d 406, 409 (8th Cir. 1996).  Moreover, the Court cannot give any further or different relief with respect to any question decided on appeal. <u>Klein v. Arkoma Prod., Co.</u>, 73 F.3d 779, 784 (8th Cir. 1996).  The mandate rule precludes re-litigation not only of issues explicitly decided by the Eighth Circuit, but also issues decided by necessary implication.  <u>In re MidAmerican Energy Co.</u>, 286 F.3d 483, 487 (8th Cir. 2002) (citation omitted).

Defendants contend that the Eighth Circuit's decision implicitly addressed the breach of contract claim.   They maintain that both parties argued their interpretation of Article XI.G: Triple Five argued that Article XI.G set forth a procedure for dealing with the opportunity to

---

generically as Defendants throughout this Memorandum and Order.

purchase the 27.5% interest, while Defendants argued that the plain language of Article XI.G did not create a first right of refusal.

Defendants ignore a very important point: The only issue before the Eighth Circuit was "whether the district court correctly analyzed the breach of fiduciary duties issue and the scope of equitable relief granted by the district court." Triple Five, 404 F.3d at 1094-95. The Eighth Circuit did not consider Triple Five's legal claims or address its contract interpretation. Indeed, the Eighth Circuit expressly noted that Triple Five's legal claims remain. Id. at 1094 n.3. Moreover, it was not necessary for the Eighth Circuit to address the breach of contract claim. The Eighth Circuit merely decided the proper scope of equitable relief. Thus, the mandate rule does not preclude Triple Five from pursuing its breach of contract claim.

2.    Issue Preclusion

Defendants also argue that the Court's previous findings should not preclude them from re-litigating the elements of the breach of contract claim. Specifically, Defendants contend that the Court's holding in the Partial Summary Judgment Order is contrary to Weihoff v. GTE Directories Corp., 61 F.3d 588 (8th Cir. 1995).

The law-of-the-case doctrine "provides that when a court decides a rule of law, that decision should govern the same issues in subsequent stages in the same case." Unigroup, Inc. v. Winokur, 45 F.3d 1208, 1211 (8th Cir. 1995) (citations omitted). The doctrine "prevents the relitigation of settled issues in an action, thus protecting the expectations of the parties, ensuring uniformity of decisions and promoting judicial efficiency." Id. (citations omitted).

Defendants are regurgitating the argument that the Court previously rejected. Moreover, Wiehoff is inapposite, as it merely holds that that collateral estoppel cannot be used

9

to deny a plaintiff his right to a jury trial when the trial court improperly dismisses jury claims.[5]  61 F.3d at 595-96; see also Lytle, 494 U.S. at 552.

Finally, the Court emphasizes a key point in this litigation: Defendants sought a bench trial on the equitable claims, and tried the equitable claims first on the premise that resolution of such claims would be largely dispositive of the remaining claims.  Accordingly, the Court refuses to vacate its previous ruling that bars Defendants from re-litigating a breach of contract claim based on Article XI.G of the Partnership Agreement.  The jury will determine the extent of damages Triple Five has suffered as a result of that breach.

## C.    Tortious Interference

Count Four alleges tortious interference with contract, fiduciary duties, and prospective business advantage by persons and entities associated with Defendants.[6]  Triple Five has condensed these related claims into a sole claim of interference with prospective business advantage.  Specifically, Triple Five claims that Defendants tortiously interfered with its opportunity to obtain the entire 27.5% interest.  The Court must address two issues relating

---

[5] In Weihoff, the plaintiff sued GTE alleging age discrimination under both state and federal law.  The case proceeded to a jury trial, but the jury deadlocked and the court declared a mistrial.  Thereafter, Weihoff asked the court to rule on his state law claim before holding a second jury trial.   The district court did so, holding that Weihoff had not met his burden of proving that age played a part in the adverse employment actions.  The court also granted GTE judgment on the federal claim based on the statute of limitations. 61 F.3d at 590-91.
On appeal, the Eighth Circuit reversed the district court's statute of limitations decision on the federal claim and remanded for trial.  Id. at 594-95.  GTE argued that no new trial was needed because the judge's ruling on the state law claim, which was not challenged on appeal, should be afforded collateral estoppel effect.  Id. at 595.  The Eighth Circuit relied on Lytle and held that the court's determination of the state claim could not collaterally estop the federal claim. Id. at 595-96.

[6] The tortious interference claim is asserted against only Defendants Simon Property Group, Inc., Simon Property Group, L.P., MS Management, and David Simon.

to this claim: whether Defendants are estopped from litigating the elements of the claim and what damages Triple Five may seek.

1.     Estoppel

Triple Five contends that the Court's prior rulings conclusively establish the elements of the tortious interference claim.   It relies on the Court's statement that "Defendants interfered with a potential business opportunity that, by virtue of the fiduciary duties inherent in the partnership, should have been offered to Triple Five."   (Feb. 10, 2004, Order at 7.)   Based on this statement, Triple Five argues that the only remaining issue is damages.

The Court disagrees.   Triple Five takes the Court's statement out of context, as the statement was made when analyzing whether Defendants were estopped from litigating the conversion claim.   Triple Five has never moved for summary judgment on the tortious interference claim and the Court has made no definitive ruling on the claim.   Triple Five must try the entire tortious interference claim to the jury.

2.     Damages

Triple Five seeks to recover "the economic difference between ownership of the entire 27.5% and ownership of half of the 27.5% — from October 1999 into the future."   (Pl.'s Mem. in Supp. of Mot. for Trial on Damages at 6-7.)   Thus, Triple Five is seeking to introduce new evidence regarding the present-day valuation of the 27.5% interest.   Defendants argue that Triple Five cannot seek damages based on a 2006 valuation of the 27.5% interest.

In June 2003, the Court prohibited Triple Five from submitting expert reports that purportedly updated the valuations of the Mall of America.   The Court reasoned that such reports were both untimely and irrelevant.   (June 5, 2003, Order at 2-3.)   Although timeliness

may not be an issue, relevancy still is.   For the reasons provided in the June 2003 Order, damages will be calculated based on the value of the Mall of America when Triple Five filed suit.   Thus, neither party may provide supplemental expert reports and no expert witness will testify about any calculations or theories outside the scope of the final expert reports that were submitted in accordance with the September 2001 Amended Pretrial Scheduling Order.

**D.     Remaining Claims**

Triple Five notes that it "does not now seek a trial on its breach of fiduciary duty (Count II) or conversion (Count V) claims."   (Pl.'s Mem. in Supp. of Mot. for Trial on Damages at 2 n.2.)     It is unclear from this statement whether Triple Five is abandoning those claims or whether it seeks to preserve those claims for potential future litigation.   The Court will not allow the latter option.   If Triple Five intends to seek relief on the breach of fiduciary and conversion claims, it must do so at the upcoming trial.   Otherwise, the Court will rule that Triple Five has abandoned those claims.

**CONCLUSION**

The election-of-remedies doctrine does not bar Triple Five from pursuing either its breach of contract or tortious interference claim.   The Court previously granted Triple Five summary judgment on the breach of contract claim, so Triple Five must establish only the extent of damages it suffered due to the breach.   However, Triple Five must try all elements of the tortious interference claim to the jury.   In addition, Triple Five must inform the Court by May 30, 2006, whether it intends to pursue or abandon any other claims arising from the 1999 transaction of the 27.5% interest.   Accordingly, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Triple Five of Minnesota Inc.'s Motion for Trial on Damages (Docket

No. 574 ) is **GRANTED in part** and **DENIED in part**;

2.      Trial will commence at 9:00 a.m. on August 21, 2006; and

3.      Trial materials required by Local Rule 39 shall be filed by August 1, 2006.

Date:  May 9, 2006

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge